UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| REBECCA MANN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-330 (JCH) |
| | : | |
| v. | : | |
| | : | |
| PATRICK DONAHOE, | : | January 5, 2012 |
| POSTMASTER GENERAL, | : | |
| Defendant. | : | |

**RULING RE:**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 26)**

## I.   INTRODUCTION

Plaintiff Rebecca Mann brought this action against her employer, the Postmaster General of the United States Postal Service, John Potter ("USPS"). Mann alleges that she has been discriminated against on the basis of her disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. Sections 12101 et seq. ("ADA"), that she has been discriminated against on the basis of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sections 621 et seq. ("ADEA"), and that she has been retaliated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq. ("Title VII").

USPS now seeks summary judgment as to all of Mann's claims. See Def.'s Mot. for Summ. J. (Doc. No. 26). In her Opposition to USPS's Motion, Mann sought the court's leave to amend her complaint. See Pl.'s Mot. to Amend (Doc. No. 34). The court granted that Motion on December 9, 2011, and granted USPS leave to file a subsequent Motion for Summary Judgment. See Order, Doc. No. 42.

**II.    BACKGROUND**[1]

Mann is an employee of USPS, and has been so employed since 1992. See Plaintiff's Local Rule 56(a)(2) Statement (Doc. No. 31-2) ("Pl.'s L.R. 56(a)(2) Stmt.") ¶ 1; Am. Compl. (Doc. No. 6) ¶ 5. She was born in 1957, and has suffered from chronic shoulder and neck pain and from headaches for approximately eight years, and from alcoholism since 2003. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 8; Plaintiff's Local Rule 56(a)(2) Statement of Disputed Facts (Doc. No. 31-2) ("Pl.'s L.R. 56(a)(2) Stmt. of Disputed Facts") ¶¶ 51-54, 57; Dep. of Rebecca Mann 37-40, 43-44, 50.

In 2008, Mann was working as a window clerk in Hartford and was supervised by Nancy Bailey. See Pl.'s L.R. 56(a)(2) Stmt. of Disputed Facts ¶ 2; Dep. of Rebecca Mann 11-12. During that year, pursuant to the Family Medical Leave Act, 29 U.S.C. 2601 et seq., Mann took some time off because of her shoulder and neck problems. See Pl.'s L.R. 56(a)(2) Stmt. of Disputed Facts ¶ 1; Dep. of Rebecca Mann 11. Around October 2008, an incident occurred between Mann and Bailey. Mann testified that Bailey attempted to prevent Mann from leaving work after Mann had already "punched off the clock." Pl.'s L.R. 56(a)(2) Stmt. of Disputed Facts ¶¶ 4; Dep. of Rebecca Mann 13. Mann reported the incident to the union and filed an Equal Employment Opportunity Complaint, and a grievance, with the union. See Dep. of Rebecca Mann 14 ("union thing filed"); id. at 15 ("I filled out an EEO complaint"); Pl.'s L.R. 56(a)(2) Stmt. of Disputed Facts ¶¶ 4, 6. The EEO Complaint was resolved by an agreement providing Mann with eighteen days of back pay, corresponding to the days of work that she had

---

[1] Unless otherwise cited, the following facts are based upon the uncontested portions of the parties' Local Rule 56(a) Statements, or are disputed facts alleged by Mann as to which evidence has been placed in the record.

2

missed after the incident, moving her out of the window clerk position, and forbidding her from bidding on window clerk jobs in the future.  See Dep. of Rebecca Mann 15-17. Mann testified that USPS has not ever paid the amount promised in the settlement. See Dep. of Rebecca Mann 15.

     Mann testified that on March 17, 2009, she had three drinks at some point before her afternoon shift at the Hartford plant.  Pl.'s L.R. 56(a)(2) Stmt. ¶ 20.  That evening, she told a nurse that she "drank less than half a pint of gin prior to arriving at work." Pl.'s L.R. 56(a)(2) Stmt. ¶ 29.  Maria Prattson, Manager of Distribution Operations at the Hartford plant, testified in an affidavit to the EEO that she observed Mann ripping a piece of mail, slurring her speech slightly, and appearing disoriented and unsteady. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 10.  David Mastroianni, Senior Plant Manager at the Hartford Plant, testified in in an affidavit to the EOO that he witnessed Mann destroying mail. Pl.'s L.R. 56(a)(2) Stmt. ¶ 11.  Mann denies these allegations.  See Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 10-11.

     Prattson testified that she instructed Mann to report to her office, and that Mann admitted to stress and to drinking earlier in the day.  See Pl.'s L.R. 56(a)(2) Stmt. ¶ 13. Prattson further testified that she requested that Mann be sent to the hospital for evaluation because Mann was "exhibiting signs of incapacitation," Pl.'s L.R. 56(a)(2) Stmt. ¶ 14, and informed Mann that "she needed to provide documentation showing she could return to work and would not be injurious to herself or others."  Def.'s L.R. 56(a)(1) Stmt. (Doc. No. 26-2) ¶ 24.[2]  Lisa Douglas, a Supervisor of Distribution Operations, and

---

[2] Mann "denies allegations [that she was instructed to provide documentation in order to return to work] but admits that they were made."  Pl.'s L.R. 56(a)(2) Stmt. ¶ 24.  In support of her denial, Mann cites the deposition testimony of David Durkin.  Id.  Durkin testified that he was aware that Pelcher-

3

David Durkin, a union steward, took Mann to St. Francis Hospital. Pl.'s L.R. 56(a)(2) Stmt. ¶ 25. At St. Francis Hospital, Mann was seen by Tomasz Michalewski, a nurse practitioner, who diagnosed Mann with ethanol intoxication. Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 30, 32. Mann's medical records show that she had a blood alcohol content equivalent to 0.212 when she was tested at 7:55 p.m. See Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 38-39. At or near midnight on March 17, 2009, Mann left the hospital. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 40.

On March 18, 2009, Mann returned to work. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 41. Shortly after arriving, Mann was called into the office of Tanya Pelcher-Herring, an HR officer. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 41. Pelcher-Herring, in consultation with David Mastroianni, placed Mann in Emergency Placement – Off Duty Status on March 18, 2009. See Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 44, 46. Pelcher-Herring averred in an EEO affidavit that, in addition to telling Mann she was being placed on off-duty status, Pelcher-Herring gave Mann a letter explaining that Mann was being placed on off-duty status pursuant to Article 16.7 of Mann's collective bargaining agreement. See EEO Investigative Affidavit of Tanya Pelcher-Herring, Ex. 8 to Def.'s Mot. for Summ. J. at 8; Letter, Ex. 9 to Def.'s Mot. for Summ. J.

On March 18, Sheila M. Luedtke, a nurse working for USPS, wrote to Mann, informing her that "the Connecticut District Occupational Health Office will need the results of the testing done at St. Francis Hospital on March 17, 2009," and requesting

---

Herring told Mann that Mann was required to provide medical documentation before she could return to work, because Durkin was present at a meeting with Mann and Pelcher-Herring when Pelcher-Herring made the request. See Dep. of David Durkin, Ex. C to Pl.'s Opp'n to Def's Mot. for Summ. J. (Doc. No. 34-1) ("Pl.'s Opp'n") at 40-41 (referring to a meeting on March 23, 2009, see id. at 33). Mann also cites the deposition testimony of Lisa Douglas, Ex. D to Pl.'s Opp'n at 40, which does not address Prattson's allegation.

that Mann sign and return a HIPAA waiver in an effort to return Mann to work. Pl.'s L.R. 56(a)(2) Stmt. ¶ 50. Luedtke made the same request on April 7, 2009. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 51. On May 1, Mann's counsel, W. Martyn Philpot, Jr., wrote to Luedtke requesting clarification of the rationale for requesting the records. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 52. Luedtke responded on May 6, 2009, explaining that it is USPS policy to require specific evidence of causes of, and treatments for, behaviors that require emergency Fitness for Duty examinations involving substance abuse. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 53. On May 15, 2009, Philpot requested that Luedtke specify the portions of Mann's contract permitting her request. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 54. On May 27, 2009, Philpot sent Luedke a letter from Mann's primary care physician opining that Mann was ready to return to work, and a letter from Mann's Employee Assistance Program consultant stating that Mann had met with him multiple times and complied with his recommendations. See Ex. 10 to Def.'s Mot. for Summ. J. 4-7. On June 16, 2009, Philpot wrote to Luedtke to find out when Mann would be allowed to return to work. See Ex. 10 to Def.'s Mot. for Summ. J. 3. Luedtke responded on June 18, 2009, stating that Mann had not provided the requested information that would permit her to return to work, and enclosed an excerpt from the Employee Labor Manual. See Pl.'s L.R. 56(a)(2) Stmt. ¶ 55.[3]

---

[3] The excerpt provides, in part:

> Return-to-work clearance may be required for absences due to an illness, injury, outpatient medical procedure (surgical), or hospitalization when management has a reasonable belief, based upon reliable and objective information, that: (a) The employee may not be able to perform the essential functions of his/her position, or (b) The employee may pose a direct threat to the health or safety of him/herself or others due to that medical condition. . . . All medical certifications must be detailed medical documentation and not simply a statement that an employee may return to work. There must be sufficient information to make a determination that the employee can perform the essential functions of his/her job, and do so without posing a hazard to self or others."

On May 12, 2009, Mann, Prattson, a union representative, and another member of USPS management attended a predisciplinary interview.  See Pl.'s L.R. 56(a)(2) Stmt. ¶ 47.  On July 7, 2009, Mann filed an EEO Complaint of Discrimination in the Postal Service.  See EEO Complaint, Ex. 2 to Def.'s Mot. for Summ. J (Doc. No. 26-4) ("EEO Compl.").  On November 29, 2009, the USPS EEO issued an investigative report.  See Ex. 15 to Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. No. 37) ("Def.'s Reply").  Mann returned to work in March 2010.  See Pl.'s L.R. 56(a)(2) Stmt. ¶ 62.

## III.  STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed.R.Civ.P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific

---

Ex. 10 to Def.'s Mot. for Summ. J. 2.

6

facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed.R.Civ.P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

**IV.   DISCUSSION**

    A.   Americans with Disabilities Act

Count One of Mann's Amended Complaint alleges a claim under the ADA.  See Am. Compl. ¶¶ 1-14.  USPS points out that the ADA is not applicable to the federal government.  See Def.'s Mot. for Summ. J. 12; Cellular Phone Taskforce v. FCC, 217 F.3d 72, 73 (2d Cir. 2000) (per curiam); Collins v. Sovereign Bank, 428 F. Supp. 2d 235, 239 (D. Conn. 2007).  Mann does not appear to contest this clear point of law.  Therefore, summary judgment is **GRANTED** as to Count One, Mann's claim under the ADA.

B.  Age Discrimination in Employment Act

In Count Two, Mann alleges that USPS violated the ADEA by "improperly consider[ing her age] in determining she was no longer capable of determining the duties of her job." See Am. Compl. ¶ 19. USPS argues that Mann fails to make out a prima facie case under the ADEA.[4] The court agrees.

Claims under the ADEA are analyzed under the burden-shifting framework introduced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Gross v. FBL Financial Services, 557 U.S. 167 (2009). See Gorzynski v. Jetblue Airways, 596 F.3d 93, 105-06 (2d Cir. 2010). The plaintiff must establish a prima facie case of discrimination by showing "(1) that she was in the protected age group, (2) that she was qualified for the position, (3) that she experienced an adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski, 596 F.3d at 107. If the plaintiff establishes those elements, thereby making out a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory explanation for the action. See id. at 106. Once the defendant produces such a reason, the plaintiff can prevail if she can show that the reason given is pretextual, and "that age was the but-for cause of the challenged adverse employment action and not just a contributing or motivating factor." Id. (internal quotations omitted).

Mann makes out the first three elements of her prima facie case, but founders on the fourth element. Mann was born in 1957, and therefore was well within the protected

---

[4] USPS also argues that Mann has not raised evidence to show that USPS's reasons for its actions are pretextual. See Def.'s Mot. for Summ. J. 15. Because the court agrees that Mann has not made out a prima facie case, it does not address this argument.

8

age group.  See Pl.'s L.R. 56(a)(2); 29 U.S.C. Section 631(a).  USPS does not argue that Mann was unqualified for the position, nor that the events of March 17 and 18, 2009, do not constitute an adverse employment action.  USPS argues that Mann's prima facie case fails because she has not produced any evidence that gives rise to an inference of age discrimination.  See Def.'s Mot. for Summ. J. 15.

In her Opposition, Mann asserts that "USPS wanted older individuals with considerable seniority out of the workforce, because there were enormous pressures to cut costs and due to her age and seniority, Mann was an expensive and readily expendable commodity."  Pl.'s Opp'n 22.  To support this allegation, Mann cites "§I" of her Opposition.  The first section of Mann's Opposition makes several factual assertions regarding the causes of the events of March 17 and 18, 2009.  See, e.g., Pl.'s Opp'n 3 ("Mann believes that her supervisors . . . wanted to retaliate against her for filing a complaint against Bailey a few months before and that generally, they did not like her very much so they fabricated the aforedescribed incident to get rid of her"); Pl.'s Opp'n 4 ( "[Mann believes that] allegations of ripping mail and being under the influence at work were, essentially, a set-up using her alcoholism as an excuse to get rid of her"); Pl.'s Opp'n 8 ("In addition, Mann was treated in the aforedescribed discriminatory fashion due to her age.  Due to Mann's age, seniority, and medical conditions partially due to her age it would be much cheaper to have a younger employee doing her job.  The USPS was looking to downsize in March 2009.  Therefore, because of the above issues—Bailey not being able to exercise absolute control over her, the Postal Service disliking her, and her alcoholism—she was an easy target for downsizing, as it turns out illegally, due to her age." (internal citations omitted)).  In her Statement of Disputed

Facts, Mann makes the following two assertions in support of her ADEA claim: that she was fifty-two years old on March 17, 2009, and that she was more expensive to the USPS than a younger and less senior employee, which "played a substantial part in the decision to discipline her." Pl.'s 56(a)(2) Stmt. of Disputed Facts.

The portions of the underlying record that Mann cites in her Opposition and in her Statement of Facts reveal the following evidence related to age discrimination. At her deposition, Mann testified that she believes that the people who discriminated against her on the basis of her age are Nancy Bailey, Maria Prattson, David Mastroianni, and Tanya Pelcher-Herring, and that all of these people are about her own age or older. See Dep. of Rebecca Mann 100-101. She believes that, because USPS is trying to reduce its workforce, she would be targeted for reduction due to her age as opposed to some other factor, "[b]ecause I don't think anything else [besides age] comes into play, honestly." See Dep. of Rebecca Mann 103. In her EEO affidavit, Mann testified: "I believe that if I were younger the company would be more willing to try to assist me, now they want to rid themselves of FMLA protected people, people on permanent light duty, and anyone perceived as chaff rather than wheat." EEO Investigative Aff., Ex. F to Pl.'s Opp'n ¶ 24. This is all of the evidence Mann cites to support her claim of age discrimination. USPS cites Mann's deposition testimony wherein she testified that she does not believe that the events of March 17, 2009, and onward occurred because of her age. See Def.'s L.R. 56(a)(1) Stmt. ¶ 63; Dep. of Rebecca Mann 35.

Based on this record, the court concludes that Mann has failed to come forward with evidence of a prima facie case of discrimination, that is, that the circumstances surrounding the events of March 17 and 18, 2009, give rise to an inference of age

discrimination. Although the burden to raise an inference of discrimination is "minimal," Mann must nonetheless introduce evidence that could support a factual inference of discrimination. See, e.g., Holcomb v. Iona College, 521 F.3d 130, 137 (2d Cir. 2008). Mann's own testimony that she "believes" she was targeted based on her age among other factors, without more, does not support such an inference. Even if the court were to accept Mann's beliefs as sufficient evidence of age discrimination to make out a prima facie case, Mann's ADEA claim would still fail, as she has not argued nor raised any evidence suggesting that her age was, in fact, the but-for cause of the adverse actions. See, e.g., Pl.'s Opp'n 22 (claiming that Mann's "age and seniority" were "the catalyst for her being set up and banished in the fashion that she was," but also that "the reason Mann was picked . . . is because of her alcoholism and other related issues with management").

    C.    Title VII

Count Three of Mann's Complaint alleges that USPS acted in retaliation for Mann's prior EEO Complaint in violation of Title VII. Am. Compl. 4-5. USPS argues that Mann failed to raise retaliation in her (second) EEO Complaint, and therefore has failed to exhaust administrative remedies in contravention of the requirements of Title VII. See Def.'s Mot. for Summ. J. 14. Mann contends that retaliation was alleged in her EEO complaint, and, in the alternative, that her retaliation falls under the exception to the exhaustion requirement.

Under Title VII, a federal employee must exhaust her administrative remedies by raising her claim to her EEO office prior to filing suit. See Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir. 2003). Mann's EEO Complaint, filed by her attorney, shows that she

checked two of eight available boxes under "14. Type of Discrimination You Are Alleging." The available boxes are: race, color, religion, national origin, sex, age, retaliation, and disability. Mann, by her attorney, checked age and disability. See EEO Compl. 1. The Complaint specifies the remedy sought: "Full reinstatement with back pay, attorney's fees, cease and desist from further harassment and immediate granting of accommodation request." EEO Compl. 1. Mann's entire description of the discriminatory actions is as follows:

> On or about March 18, 2009, the Complainant was placed on Off Duty status without pay for alleged inappropriate conduct. The Complainant was, and has in the past, experienced chronic headaches and also suffers from the disability of alcoholism. The Respondent was aware of her problem as a prior incident occurred in December of 2008. She thereafter applied for FMLA but was denied due to not having the requisite amount of hours needed to qualify.
> On March 17, 2009, Complainant took medication for a stress headache and while working was called to the office of Maria Prattson who falsely accused her of ripping mail. The Complainant is being harassed, overly scrutinized, discriminated against due to her age of 52 years, as well as her disabilities of alcoholism and chronic headaches. Moreover, Complainant has sought but been denied reasonable accommodations regarding her disabilities.

EEO Compl. 2. This comprises all of the information Mann provided about her allegations in the EEO Complaint besides her own identifying information and information identifying others allegedly involved. Mann's EEO Complaint clearly fails to raise a claim of retaliation.[5]

---

[5] Mann's Opposition insists that "Mann mentioned retaliation in the EEO complaint by bringing up the issue of retaliation by asking to prevent further retaliation and by stating in her affidavit how she was perceived to be a problem employee by management after the Bailey complaint. See, Exs. E, F. . . . Mann did [ . . . ] mention retaliation in her EEO complaint by asking the investigators to ensure there is no retaliation because of the complaint. Ex. E." Pl.'s Opp'n 23. These claims are sloppy at best and dishonest at worst. As recounted above, Mann's EEO Complaint does not address retaliation. Exhibits E and F to the Opposition are the EEO Investigation Report and an excerpt from Mann's EEO Affidavit, respectively.

The Second Circuit has recognized an exception to the exhaustion requirement for claims "sufficiently related" to those raised by an EEO complaint "'that it would be unfair to civil rights plaintiffs to bar such claims in a civil action.'" Terry, 336 F.3d at 151 (quoting Butts v. City of New York, 990 F.2d 1397, 1402-03 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir.1998)). Three types of claims have been found to fit within this exception: "(1) claims where the conduct complained of would fall within the scope of the administrative investigation; (2) claims alleging retaliation by an employer against an employee for filing an administrative charge; and (3) claims where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the administrative charge." Zawacki v. Realogy Corp., 628 F. Supp. 2d 274, 283 (D. Conn. 2009). Mann argues that her retaliation claim fits within the first and third exceptions. See Pl.'s Opp'n 24.

The first exception applies when it "would fall within the scope of the EEOC investigation which can reasonably expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal citations omitted). It has been described as "essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel . . ." Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003). Courts have been less willing to extend this exception to plaintiffs who were represented by counsel when they filed administrative complaints. See, e.g., Zawacki, 628 F. Supp. 2d at 284. When a plaintiff alleges discrimination but not retaliation in an administrative complaint, the Second Circuit has held that "[t]he scope of an EEOC investigation

cannot reasonably be expected to encompass retaliation."[6]  O'Hara v. Memorial Sloan-Kettering Cancer Center, 27 Fed. Appx. 69, 71 (2d Cir. 2001); see also Abraham v. Potter, 494 F. Supp. 2d 141, 151 (D. Conn. 2007).

As discussed above, Mann clearly alleged discrimination but not retaliation in her EEO Complaint, where she was represented by counsel when she filed the Complaint. See EEO Compl.  The investigation that did, in fact, grow out of the EEO Complaint cannot be said to include a claim of retaliation.[7]  The summary of the report does not mention retaliation.  See Ex. E to Pl.'s Opp'n.  Mann's Affidavit mentions her prior complaint but in no way alleges retaliation.  See Ex. F. to Pl.'s Opp'n ("There is background . . . that I need to try to explain concerning these events.  This situation began on March 17th. . . . Previously, I had filed a complaint that I consequently withdrew because I needed to go back to work. . . . Now, it appeared I . . . was going to be punished again by being thrown to whatever position which happened to be available").  Mann's Affidavit in no way alleges or suggests that her prior complaint is related to what happened in March 2009.  Therefore, Mann's claim for retaliation does not fall within the first exception to the exhaustion requirement.

Mann argues that "the [court] complaint was filed when Mann was out of work because of the retaliatory suspension, and as such the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in the

---

[6] The Second Circuit treats as analogous the exhaustion requirement for federal employees before the EEO and the exhaustion requirement for private claimants before the EEOC.  See Terry v. Ashcroft, 336 F.3d 128, 150-51 (2d Cir. 2003) (citing Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).

[7] At least one court in this district has interpreted this test to permit claims that were not raised in an administrative complaint when those claims were actually covered by the administrative investigation.  See Cameron v. St. Francis Hosp., 56 F. Supp. 2d 235, 239 (D. Conn. 1999).

EEOC charge, which bring her under the ambit of the third exception." Pl.'s Opp'n 25. The third exception to the administrative exhaustion requirement applies when "a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Butts v. City of New York, 990 F.2d 1397, 1402-03 (2d Cir. 1993), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir.1998).  Before a court can consider whether further incidents of discrimination were carried out in precisely the same manner, a plaintiff must show that her court complaint alleges incidents of discrimination beyond what was included in her administrative complaint. See, e.g., Abraham v. Potter, 494 F. Supp. 2d 141, 152 (D. Conn. 2007) (rejecting plaintiff's claim under the third exception where court and administrative complaint addressed the same incident).  Mann's EEO Complaint and her Amended Complaint in this court both address the events of March 17 and 18, 2009, and the period Mann spent out of work following those events.  Her EEO Complaint was filed in July 2009, when she had already been on Off Duty status for several months.  See EEO Compl.  She does not allege any further incidents of discrimination in her Complaint, nor does she raise evidence of such incidents in her Opposition.  Therefore, her retaliation claim is not within the third exception to the exhaustion requirement.

Because Mann did not allege retaliation in her EEO Complaint, and because her retaliation claim in this court does not fall within an exception to the administrative exhaustion requirement, she has failed to exhaust her administrative remedies as to retaliation.  Therefore, USPS's Motion for Summary Judgment is **GRANTED** as to Mann's retaliation claim.

## V.  CONCLUSION

For the foregoing reasons, USPS's Motion for Summary Judgment (Doc. No. 26) is **GRANTED** as to Mann's claims under the ADA, the ADEA, and Title VII.  Because Mann has timely filed a Second Amended Complaint (Doc. No. 43) per this court's Order (Doc. No. 42), there remains an outstanding claim.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 5th day of January, 2012.

      /s/ Janet C. Hall

Janet C. Hall
United States District Judge